**PUBLIC SERVICE COMMISSION OF KENTUCKY, Appellant,**

v.

**ATTORNEY GENERAL OF the COMMONWEALTH; Boone County Water and Sewer District; Campbell County Kentucky Water District; Kenton County Water District No. 1; City of Florence, Kentucky; and City of Newport, Kentucky, Appellees.**

**No. 92–CA–1817–MR.**

Court of Appeals of Kentucky.

June 25, 1993.

As Modified and Case Ordered Published by Court of Appeals Aug. 20, 1993.

Gerald E. Wuetcher, Susan Mastin Scott, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Ellen E. Easom, William Edwin Doyle, Asst. Atty. Gen., Utility and Rate Intervention Div., Frankfort, for appellee, Com. of Kentucky.

Michael P. Collins, Florence, for appellee, Boone County Water and Sewer Dist.

James M. Honaker, John N. Hughes, Frankfort, for appellees, Campbell County Kentucky Water Dist. and Kenton County Water Dist. No. 1.

Dale T. Wilson, Rouse, Skees, Wilson & Dillon, Florence, for appellee, City of Florence.

Bruce F. Clark, Thomas A. Marshall, Stites & Harbison, Frankfort, for appellee, City of Newport.

Before DYCHE, McDONALD and WILHOIT, JJ.

McDONALD, Judge.

The appellant, Public Service Commission of Kentucky (PSC), has appealed from the declaratory judgment of the Franklin Circuit Court which determined that appellant was not authorized to charge the appellee utilities, Boone County Water and Sewer District, Campbell County Kentucky Water District and Kenton County Water District # 1, for the cost of a management and operations audit as part of a KRS Chapter 74 merger feasibility study. The issue concerns the relationship, if any, between two statutes, KRS 74.361 and KRS 278.255. In addition to these utilities, the Attorney General, City of Florence and City of Newport[1] intervened in the proceedings and were joined as defendants in the declaratory judgment action commenced by the PSC.

The appellant utilizes the first several pages of its brief to educate this Court on the nature of management and operations audits, and to convince us of how essential they are to the PSC in determining whether a merger of water districts is warranted and will serve the purposes set out in KRS 74.361(1).[2] The PSC has sufficiently impressed upon us the complexity of its task in determining whether or not merger of districts is practical or advisable. In fact, none of the appellees suggests that the PSC lacks the authority to conduct such audits.[3]

The issue is whether the PSC can conduct these audits at the expense of the utilities potentially subject to involuntary merger. The trial court's opinion in this regard is well-reasoned, supported by ample authority and addresses the arguments made on behalf of both sides of the issue. Finding it inefficient to rehash or paraphrase the trial court's judgment, we adopt the following portion of the judgment appealed from as our own:

KRS 74.361 gives the PSC broad powers to investigate the feasibility of the merger of water districts. KRS 74.361(2) states:

The public service commission of Kentucky is authorized and empowered to initiate, carry out, and complete such investigations, inquiries, and studies as may be reasonably necessary to determine the advisability as to the merger of water districts. Prior to ordering a hearing with reference to the merger of any water district into one or more additional water districts, the public service commission shall cause to be prepared in writing a feasibility report and study regarding the proposed merger, containing such studies, investigations, facts, historical data, and projections as in the circumstances may be required in order to enable the commission to formulate a proper decision regarding such merger.

This statute by its own terms does not assign the responsibility for the underlying costs of such a feasibility study.

The PSC considers this an ambiguity and argues that the statute must be construed with KRS 278.225(2) which authorizes the PSC to provide for management audits of "any utility under its jurisdiction

---

**1.** The City of Newport is the principal water supplier for Campbell County Water District. The City of Florence is a wholesale purchaser of water from the Kenton Water District. Neither city filed a brief in this Court. The Attorney General, who represents the interests of consumers before regulatory agencies under KRS 367.-150, has filed a brief in support of the judgment.

**2.** KRS 74.361(1) provides: "The general assembly of the Commonwealth of Kentucky determines as a legislative finding of fact that reduction of the number of operating water districts in the Commonwealth will be in the public interest, in that mergers of such districts will tend to

eliminate wasteful duplication of costs and efforts, result in a sounder and more businesslike degree of management, and ultimately result in greater economies, less cost, and a higher degree of service to the general public; and that the public policy favors the merger of water districts wherever feasible."

**3.** The appellees/utilities suggest such studies should be called "evaluations," not "audits," but do not challenge the PSC's right to conduct a management audit under KRS 74.361(1), set out in n. 1 above.

... to investigate all or any portion of the management and operating procedures or any other internal workings of the utility." Subparagraph (3) of this statute provides that the cost of such management audits shall be borne by the utility.

We hold that the PSC's attempt to use the provisions of KRS 278.255 as a basis for allocating the cost of the merger study to the respondent Water Districts exceeds the statutory authority granted to the PSC by the General Assembly. If the General Assembly had intended the cost of the merger study under KRS Chapter 74 to be funded like a management audit under KRS 278.255, such provision could easily have been specifically included in the language of Chapter 74. It was not.

The PSC's powers are purely statutory. *City of Olive Hill v. Public Service Commission,* [305 Ky. 249], 203 S.W.2d 68 (1947). When a statute prescribes the procedures that an administrative agency must follow, the agency may not add or subtract from those requirements. *Union Light, Heat and Power Company v. Public Service Commission,* Ky., 271 S.W.2d 361 (1954). Here the statutory authority urged by the PSC is not present in the statute and the PSC's effort to assign these costs to the utilities is in excess of its statutory power.

The lack of interrelationship between KRS 74.361 and KRS 278.255 is further underscored by a consideration of the legislative history of these two statutes. KRS 74.361 was enacted in 1978 [sic [4]]. The management audit statute was enacted in 1984. Several merger feasibility studies were made under KRS 74.361 prior to the adoption of the management audit statute. In light of this, how can the PSC now claim, as it does, that the management audit is the only available tool to assess the appropriateness of merger? The management audit statute was not used in these prior feasibility studies.

WHEREFORE, the Court declares that the PSC has no authority to impose the cost of a merger feasibility study on the respondent utilities (and presumably their rate payers) by reference to the authority of KRS 278.255.

The PSC insists Judge Graham has turned a "blind eye to the nature of the proposed audits." Further the PSC argues that because an audit under KRS 278.255 made prior to a merger investigation can be used in the subsequent investigation, the trial court has "elevated form over substance and made timing, not public policy, the key factor in an audit's use." We find no merit to these arguments. It is clear from the record that the audits at issue were ordered with an eye toward merger. That the PSC enlarged the focus of the audits so that rate payers would get some benefit in case merger was found not feasible, does not alter the "nature" of the audits as being ones for use as part of a merger study under KRS Chapter 74. Too, while it is true that an audit properly conducted by the PSC under its regulatory function and authorized by KRS 278.255 could subsequently be used if merger was considered, such would merely be a fortuitous event for the PSC. Certainly this argument provides no legal rationale that all merger study audits should be paid for under the authority expressed in KRS 278.255.

Finally, the PSC argues the trial court "failed to grasp that the usefulness of any audit in a merger investigation depends in large measure on the particular circumstances of the water districts to be investigated." This criticism is a result of the trial court's reasoning that the legislation in KRS 74.361 was enacted long before KRS 278.255, that merger investigations were carried out and paid for by the PSC before the enactment of KRS 278.255, and thus the PSC's reliance on the later statute to shift the cost of the merger study/management audit to the utilities is legally untenable. It really does not matter whether the trial court "grasped the usefulness" of the studies for, as stated earlier, no one questions their importance to the PSC. What the trial court did grasp was (1) that the legislature did not mention mergers or merger feasibility studies, or reference KRS 74.361 anywhere in KRS 278.255, (2) KRS 74.361 does not give the PSC any authority to charge the utilities for the studies

---

**4.** This statute was originally enacted in 1972.

and (3) that the PSC may make any studies or seek any counsel it chooses in studying merger issues which it must pay for from its own budget.

Accordingly, the judgment of the Franklin Circuit Court is affirmed.

All concur.