KENTUCKY REAL ESTATE
COMMISSION and David
L. Jones, Appellants,

v.

Aaron MILGROM, Appellee,

and

David L. Jones and Kentucky
Real Estate Commission,
Appellants,

v.

Aaron Milgrom, Appellee.

Nos. 2004–CA–001513–MR,
2004–CA–001540–MR.

Court of Appeals of Kentucky.

Oct. 7, 2005.

Discretionary Review Denied by
Supreme Court Aug. 17, 2006.

Geraldine Lee B. Harris, Louisville, KY, for appellant Kentucky Real Estate Commission.

Richard E. Vimont, Lexington, KY, for appellant David L. Jones.

John B. Park, Lexington, KY, for appellee.

Before MINTON, SCHRODER, and TAYLOR, Judges.

## OPINION

SCHRODER, Judge.

These are two appeals from an opinion and order reversing a decision of the Kentucky Real Estate Commission ("KREC") disciplining a broker licensee/buyer for failing to set up and retain certain funds in an escrow account and for misrepresenting that he had a line of credit and was holding the funds in an escrow account. The circuit court held that the KREC did not have the statutory authority to discipline the licensee/buyer because he was acting in his individual capacity when he agreed to set up the escrow account. Because the licensee/buyer was the owner of the property which was sold and for which the escrow account was to be set up, he was subject to discipline by the KREC pursuant to KRS 324.020(3).

On March 12, 1998, appellant, David Jones entered into a written contract with the Milgrom Group, Inc. (Milgrom Group) whereby Jones agreed to sell the Milgrom Group an apartment complex in Lexington. At the time the contract was made, the agency disclosure form indicated that appellee, Aaron Milgrom, a licensed broker in Kentucky, would be the buyer's agent. Prior to the closing, it was discovered that the property violated several provisions of the local building code which required certain repairs in order to bring the property into compliance. Jones agreed to make the repairs at his expense. On March 30, 1998, the parties agreed that $30,000 of the purchase price would be withheld from the closing to assure that sufficient monies were available to cover the cost of the repairs. The written agreement signed by both Jones and Milgrom stated as follows:

> Sellers agree to cause all repairs to be brought into compliance with code enforcement and has escrowed $30,000 with an escrow agent acceptable to buyer and with terms acceptable to buyer. Sellers' liability is to bring property into compliance and will pay any extra required. Buyer will return unused sums to seller.

A handwritten notation next to the seller's signature stated, "To be escrowed with closing attorney Dan Rose."

Sometime prior to the closing, the Milgrom Group assigned its rights to purchase the property to Aaron Milgrom and his then wife, Maralyn Milgrom. Approximately six weeks after closing, Milgrom confirmed to Jones by letter that he was holding the $30,000 in escrow. The letter, dated May 14, 1998 stated, "Please advise on the progress of the electrical and structural repairs for which we are holding an escrow." When the electrical repairs were

completed in July of 1998 and the bill was presented to Milgrom for reimbursement, he paid half of the repairs and indicated by letter that he would pay the balance some time the following month after he had collected rent from his tenants. On August 3, 1998, Jones' attorney wrote Milgrom demanding that the balance of the escrow account be established as per the agreement between Milgrom and Jones. It is undisputed that Milgrom never established the escrow account, but instead used the $30,000 to purchase a shopping center because of potential tax consequences.

According to Milgrom, because of the possibility of these tax consequences, Milgrom and Jones agreed at the closing that Milgrom would not set up an escrow account, but rather Milgrom would establish a line of credit to cover the repairs. Jones maintains that Milgrom further agreed to deposit $30,000 into Milgrom's own brokerage escrow account to pay off the line of credit. In any event, it is undisputed that Milgrom never established a line of credit to cover the repairs.

On September 28, 1998, Jones filed a complaint with the KREC alleging violations of various real estate license laws. A hearing was held on these allegations on February 1, 2000. On July 5, 2000, the KREC adopted in full the hearing officer's recommended findings of fact, conclusions of law and order, finding that: Milgrom violated KRS 324.160(1)(h) for failing to account for or remit, within a reasonable time, monies belonging to another; Milgrom violated KRS 324.160(1)(r) for conduct which constitutes improper, fraudulent or dishonest dealing; and Milgrom violated KRS 324.111 for failing to set up an escrow account into which monies belonging to another would be placed. Milgrom then filed a petition for relief from the KREC's order in the Clark Circuit Court. On July 14, 2004, the Clark Circuit Court entered its opinion and order reversing the decision of the KREC, adjudging that the KREC acted outside its statutory authority in disciplining Milgrom because Milgrom was acting in his individual capacity as a buyer and not in his capacity as broker when he agreed to set up the escrow account. Jones and the KREC both filed appeals from that order.

 Jones and the KREC both argue that the circuit court erred in reversing the KREC's decision because the decision was not arbitrary and was supported by substantial evidence. Judicial review of an administrative agency's decision is limited to the question of whether the agency's action was arbitrary. *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.,* 141 S.W.3d 378 (Ky.App.2004). In determining whether the agency's action was arbitrary, the reviewing court must consider: 1) whether the administrative agency acted within its statutory powers; 2) whether due process was afforded; and 3) whether the decision reached was supported by substantial evidence. *Hougham v. Lexington–Fayette Urban County Government,* 29 S.W.3d 370, 373 (Ky.App.1999) (citing *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964)). The circuit court in the case at bar reversed the KREC's decision based on the first factor, determining that the KREC acted outside its statutory authority in disciplining Milgrom.

 An administrative body's powers are defined and limited by the agency's enabling statute. *Public Service Commission of Kentucky v. Attorney General of the Commonwealth,* 860 S.W.2d 296 (Ky.App.1993). An agency may not assume any power not expressly granted to it by the general assembly. *GTE v. Revenue Cabinet, Commonwealth of Kentucky,* 889 S.W.2d 788, 792 (Ky.1994). The enabling

legislation for the KREC is contained in KRS Chapter 324. KRS 324.281 provides for the KREC and sets out its duties, including "hold[ing] disciplinary hearings concerning matters in controversy as provided by this chapter." KRS 324.281(5). KRS 324.150(1) states:

> The commission or its staff may on its own initiative investigate the actions of any licensee or any person who acts in that capacity. On the verified written complaint of any person, the commission shall investigate the actions of any person who assumes to act in that capacity, if the complaint, together with any evidence presented in connection with it, alleges a prima facie case that a violation set out in KRS 324.160 has been committed. After the investigation, the commission may order a hearing and, in appropriate cases, take disciplinary action against any licensee who is found in violation of KRS 324.160.

KRS 324.160(4) to (7) lists the various conduct that is subject to sanctions by the KREC "against a licensee", and KRS 324.160(1) sets out the sanctions that can be imposed by the KREC for said violations, including license suspension, license revocation, probation, and fines.

It is undisputed in the present case that Milgrom was a licensed real estate broker pursuant to KRS 324.010(10) and KRS 324.046(1) when he entered into the contract with Jones to purchase the property at issue. Nevertheless, the circuit court found that Milgrom was acting in his individual capacity as a buyer when he agreed to set up the escrow account for the repair funds. The court relied on *Leishman v. Goodlett*, 608 S.W.2d 377 (Ky.App.1980) in reaching that conclusion.

In *Leishman,* the licensee obtained a loan for himself to build a house based on a fraudulent misrepresentation that he owned the property on which the house was being built, which property was security for the loan. When the licensee defaulted on the loan, it was discovered that he never owned the property pledged as security. The lender filed a complaint with the KREC. After a hearing, the KREC dismissed the complaint, concluding that the licensee was not acting in his capacity as a broker or salesman, but as a builder-developer, when he obtained the loan. The circuit court reversed. This Court agreed with the KREC's dismissal of the complaint, adjudging that the licensee was acting in his private capacity when he obtained the loan and that the KREC cannot discipline licensees acting in their private capacity:

> The purpose of the act [KRS Chapter 324] is to protect the public from unscrupulous brokers and salesmen. *Sims v. Reeves,* Ky., 261 S.W.2d 812 (1953). The obvious intent is to protect the public from unscrupulous acts committed by realtors in their capacity as brokers and salesmen, not in their private capacity.

*Leishman,* 608 S.W.2d at 378.

The circuit court in the case at bar looked at the following definition of "real estate brokerage" in KRS 324.010(1) in determining that Milgrom was likewise acting in his private capacity:

> "Real estate brokerage" means a single, multiple, or continuing act of dealing in time shares or options, selling or offering for sale, buying or offering to buy, negotiating the purchase, sale, or exchange of real estate, engaging in property management, leasing or offering to lease, renting or offering for rent, or referring or offering to refer for the purpose of securing prospects, any real estate or the improvements thereon *for others* for a fee, compensation, or other valuable consideration.

(Emphasis added.) The circuit court interpreted the above such that the licensee must perform the real estate service "for others". The court found that the actions Milgrom was being disciplined for were actions he was taking for himself as a private buyer, not for others as a broker:

> [T]he Commission based its Order disciplining Milgrom on its findings that Milgrom breached duties he owed to Jones to deposit the $30,000.00 retainage into an escrow account and to reimburse Jones promptly upon completion of repairs, and further that Milgrom misrepresented that he had performed his obligation to deposit the retainage into an escrow account, and stood ready to perform his obligation to reimburse Jones promptly. Milgrom owed these obligations to Jones in his individual capacity as Buyer under the real estate purchase contract, and not as a broker acting on behalf of another.

■ From our reading of the current version of KRS Chapter 324, a licensee does not always have to be acting for a party other than himself in order to be subject to the jurisdiction of the KREC. Subsequent to this Court's decision in *Leishman,* the Kentucky General Assembly amended KRS 324.020 in 1982 to extend the provisions of KRS Chapter 324 as follows:

> A licensee who is an owner or a builder-developer shall comply with the provisions of this chapter and the administrative regulations applying to real estate brokers and sales associates.

KRS 324.020(3).

In *Allard v. Kentucky Real Estate Commission,* 824 S.W.2d 884 (Ky.App.1992), it was undisputed that the licensee's contractual agreements with the buyers were conducted in his capacity as developer/builder, and not as a broker. Thus, the licensee argued that the KREC had no jurisdiction over his conduct. This Court rejected this argument in light of KRS 324.020(2) (now KRS 324.020(3)). "KRS 324.020(2) was adopted in 1982 to specifically apply the provisions of KRS Chapter 324 to a licensee acting in the capacity of an owner or builder/developer." *Id.* at 886.

■ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the General Assembly. *Horn by Horn v. Commonwealth,* 916 S.W.2d 173 (Ky.1995). From our reading of KRS 324.020(3) and *Allard,* it is clear that the Legislature intended for licensees who are owners or builder-developers of property to be bound by the provisions in KRS Chapter 324 and the regulations promulgated pursuant thereto when they are conducting transactions relative to those properties. As to appellee's argument that such a reading of KRS 324.020(3) conflicts with the requirement that the licensee "act for others" in the definition of "real estate brokerage" in KRS 324.010(1), we must presume that the Legislature was aware of the definition of "broker" (now "real estate brokerage") in KRS 324.010 when they amended KRS 324.020 in 1982. *See Miller v. Jones,* 658 S.W.2d 888 (Ky.App.1983). It is also presumed that the Legislature has knowledge of court decisions relative to existing laws (*Leishman*) at the time they enact new legislation on the same subject matter. *Commonwealth v. Boarman,* 610 S.W.2d 922 (Ky.App.1980). Thus, to the extent KRS 324.010(1) conflicts with KRS 324.020(3), the latter is controlling.

■ As to Milgrom's argument that he was not acting as owner or builder/developer when he entered into the agreement with the seller to set up an escrow account, we deem this position to be untenable. In the absence of definition of a term in a statute (in this case, the definition of "own-

er" or "builder/developer"), the term is to be given its ordinary meaning. *Commonwealth v. Harrelson,* 14 S.W.3d 541 (Ky. 2000); *Old Lewis Hunter Distillery Co. v. Kentucky Tax Commission,* 302 Ky. 68, 193 S.W.2d 464 (Ky.1945). Although the KREC made no specific finding that Milgrom was an "owner or builder/developer", the evidence clearly established that Milgrom purchased the property for himself, and thus was acting as an owner of the property when he agreed to set up the escrow account to cover the repairs to the property.

We would also note that the facts in the case at bar are easily distinguishable from the facts in *Leishman* in that the licensee in *Leishman* was not buying or selling property, but was borrowing money to build on the property. Milgrom was buying property and executed an agency disclosure form specifically stating that he was acting as the agent of the buyer. And most significant is the fact that Milgrom received a 3% commission ($27,900) on the transaction as the buyer's agent.

For the reasons stated above, the judgment of the Clark Circuit Court is reversed and the decision of the KREC is hereby reinstated.

ALL CONCUR.